UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

| | |
|---|---|
| DIANA NEZ, <br><br> Plaintiff, <br><br> v. <br><br> BHP NAVAJO COAL COMPANY, <br><br> Defendant. | No. 04-CV-0444 BRB/RLP |

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

Plaintiff Diana Nez sued Defendant BHP Navajo Coal Company (BHP), alleging the company violated New Mexico and federal law when it terminated her employment. Plaintiff voluntarily dismissed her state-law claims. See Fed. R. Civ. P. 41(a)(1)(ii). Plaintiff's remaining federal claims allege Defendant unlawfully: (1) discriminated against her on the basis of race (Navajo) and gender (female) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e – 2000e-17; and (2) retaliated against her in violation of Title VII's anti-retaliation provision, id. § 2000e-3. The matter is before the court on Defendant's summary judgment motion. Summary judgment is appropriate if no genuine issue as to any material fact exists and the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Applying this standard, the court grants BHP's motion.

I.

The following facts are undisputed or set forth in the light most favorable to Plaintiff.  In 1990, Plaintiff commenced work with BHP.  She joined the International Union of Operating Engineers (IUOE).  The Mine Safety and Health Administration issued Plaintiff an electrician's card after she graduated from the company's apprenticeship program.  BHP promoted Plaintiff to an electrician position and transferred her to a mine in La Plata, New Mexico.

In the fall of 2000, Plaintiff served as an IUOE "union steward."  In that capacity, Plaintiff filed a grievance on behalf of a female co-employee, Marie Teasyatwho.  The grievance challenged discipline Teasyatwho's supervisor, Darren Shondee, imposed against her for violating lunch-break rules.  During the sequential grievance process, Plaintiff asked BHP management to treat female employees with "dignity and respect" and to make females feel "safe" while working amongst males.  BHP denied the grievance at all levels.

In February 2002, BHP transferred Plaintiff to the "Navajo Mine" in Fruitland, New Mexico, to work as an electrician.  At this time, Shondee supervised the Navajo Mine electrical crew.  Shondee immediately began to

"strictly enforce" the company's work rules against Plaintiff.[1]  For example, Shondee reprimanded Plaintiff for excessive use of the electrical crew's computer.  Shondee, however, used the computer for personal reasons and sent one allegedly offensive email to Plaintiff.[2]  Plaintiff also believed Shondee inappropriately singled her out on two occasions.  On the first occasion, Plaintiff complained about BHP's inaccurate overtime records.  Shondee, in response, wrote a letter that stated Plaintiff was the only person who raised the overtime issue.  The letter also thanked Plaintiff for bringing the error to the company's attention.  On the second occasion, Shondee made a comment to the effect that a dragline would not have been down for so long with a motor problem if Plaintiff had not taken two hours to obtain a drill.  In reality, Plaintiff had only taken half an hour to obtain the drill.  Shondee's comment, in Plaintiff's opinion, reflected negatively upon her work ethic.

---

[1] By contrast, Shondee treated another female employee, Christine Aspaas, more favorably.  Aspaas, according to Plaintiff, spent excessive amounts of time in Shondee's office with the "doors locked" and "windows papered."  Plaintiff testified, however, that she did not have any knowledge that Shondee and Aspaas were engaged in an intimate relationship.  (Pl.'s Resp., Exh. A, at 127).

[2] The challenged email, entitled "Mexican Gerber," contains a picture of chilies surrounding a baby-food jar.  The jar's label says "Picante Sauce" and depicts a child making a face as if he or she had just ate spicy food.  The email is irrelevant to Plaintiff's claim of discrimination based on race (Navajo) or gender (female) even if it could somehow be considered "racially offensive."  See Fed. R. Evid. 401, 402.

3

Plaintiff filed a harassment charge against Shondee with BHP because of his "attitude problem."[3] The company did not take any action on the charge. At Plaintiff's request, however, BHP reassigned her to the "Rolling Stock Maintenance" crew in March 2003. BHP reassigned Plaintiff "on the basis of business need and in the hope that this reassignment [would] serve as an opportunity [for Plaintiff] to prove [she could] consistently demonstrate appropriate behavior in the workplace." James Smith supervised Plaintiff on her new crew.

On September 21, 2003, Plaintiff failed to report to work for a scheduled overtime shift. The parties' collective bargaining agreement provides that "supervisors may excuse an employee from required overtime for good and sufficient reason." BHP employees may be "forced" to work scheduled overtime shifts if a supervisor does not excuse their attendance from the scheduled shift. Furthermore, BHP's "Attendance Policy" provides "[a]n employee is considered

---

[3] Plaintiff testified she did not know whether the claim she filed against Shondee was a "sexual harassment" claim. (Pl.'s Resp., Exh. A, at 117-18). Plaintiff's co-employee, Vic Dalapaz, testified that Shondee told him that "[Plaintiff] wanted to have sex with him to feel what it felt like to fuck the company." (Pl.'s Resp., Exh. D, at 11). Dalapaz's testimony, however, is hearsay and therefore inadmissible. See Fed. R. Evid. 802; Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (holding that Rule 56 precludes the use of inadmissible hearsay in depositions submitted in support of, or in opposition to, summary judgment). Dalapaz's testimony cannot be considered an admission under Rule 801(d) because the matter is not within the scope of the agency or his employment. See Fed. R. Evid. 801(d)(2)(D).

to have an unexcused absence if he/she fails to prearrange their absence, fails to report off, or if the excuse for the absence is unacceptable to the employee's supervisor." Employees "report off" under the policy by "notify[ing] the Company *prior to their scheduled shift* of their intent to be absent/tardy." (emphasis added). For *any* absence other than sickness or injury, the employee "*must* receive [her] supervisor's permission prior to being off work." (emphasis added). If the reason for the employee's absence is injury or sickness, the employee "must report [her] need to be absent in advance of the shift or as soon as possible thereafter." Plaintiff did not "report off" prior to her absence on September 21, 2003. Plaintiff's supervisor for the overtime shift, Gary Jensen, considered the absence unexcused.

On September 28, 2003, Plaintiff failed to report for her scheduled shift because she got engaged. Plaintiff did not contact Smith, leave Smith a voicemail on his telephone, or leave a message with BHP's twenty-four hour "report off" service. Plaintiff did not provide Smith with any reason for her September 28 absence. Smith considered Plaintiff's absence unexcused.

Plaintiff again failed to report for her regularly scheduled day shift on September 30, 2003. Plaintiff did not "report off" prior to her absence. The next day, Plaintiff informed Barry Cason, a BHP maintenance and safety supervisor, that she did not "report off" on September 30 because "she had a personal issue at

5

home and was not feeling well about it." Plaintiff subsequently submitted a note from a Navajo medicine woman that indicated she sought "traditional medicine ceremonies" during the afternoon of September 30, 2003. Smith considered the absence unexcused. BHP upheld Smith's determination in a later filed grievance because Plaintiff failed to "report off" any time before or during the day shift and, under the Attendance Policy, "even emergency absences require reporting off *prior* to the scheduled shift if possible or as soon as practical thereafter." (emphasis added).

On October 3, 2003, Smith terminated Plaintiff's employment pursuant to the Attendance Policy. The policy provides that "[e]mployees who fail to report off work and/or accumulate a total of three (3) unexcused absences during a six (6) month period shall be presumed to have terminated their employment with the Company." Smith did not know that Plaintiff had represented any other employee with respect to discrimination or harassment claims at the time of her discharge. BHP did not replace Plaintiff. Plaintiff thereafter filed a discrimination and retaliation charge with the New Mexico Human Rights Division. See 42 U.S.C. § 2000e-5(c). The Equal Employment Opportunity Commission, after investigation, concluded BHP did not violate any federal discrimination statutes. The agency issued Plaintiff a right to sue letter, and this suit followed.

II.

Counts I and II of Plaintiff's complaint allege BHP discriminated against her on the basis of race and gender in violation of Title VII when the company terminated her employment.  Count II of Plaintiff's complaint also alleges a sexually hostile work environment existed at BHP and various discrete discriminatory acts of sexual harassment.  The court will address Plaintiff's discriminatory discharge and sexual harassment claims in turn.

A.

Title VII prohibits "discriminat[ion] against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex[.]"  42 U.S.C. § 2000e-2(a)(1).  An employee allegedly aggrieved under Title VII must proceed under the familiar McDonnell-Douglas burden-shifting framework if she lacks direct evidence of discrimination. Amro v. Boeing Co., 232 F.3d 790, 796 (10th Cir. 2000).  Under the McDonnell-Douglas framework, the employee first bears the burden of establishing a prima facie case of discrimination.  Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005).  To establish a prima facie case of discriminatory discharge, the employee must show:  (1) she belongs to a protected class; (2) she was qualified for her job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge.  Kendrick v. Penske Transp. Serv., Inc., 220 F.3d

1220, 1229 (10th Cir. 2000).  Under the third element, an inference that the employee was qualified for her position arises if she has been employed with the company for an "extensive period."  English v. Colorado Dep't of Corrections, 248 F.3d 1002, 1008 (10th Cir. 2001).  Recently, the Tenth Circuit cabined the fourth element to cases in which the employer's stated reason for discharging the employee is the elimination of her position.  Plotke, 405 F.3d at 1100.

If the employee establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  Kelley v. Goodyear Tire and Rubber Co., 220 F.3d 1174, 1177 (10th Cir. 2000).  The employer must produce evidence that supports its reason for discharging the employee to carry its burden.  English, 248 F.3d at 1009.  An employee's discharge for failure to maintain satisfactory attendance is legitimate and non-discriminatory.  Aramburu v. Boeing Co., 112 F.3d 1398, 1403 (10th Cir. 1997).

If the employer articulates a legitimate, non-discriminatory reason for the employee's discharge, the burden shifts back to the employee to demonstrate the employer's proffered reason was a pretext for unlawful discrimination.  Sorensen v. City of Aurora, 948 F.2d 349, 352 (10th Cir. 1993).  An employee demonstrates pretext with evidence the employer's proffered reason is so weak, implausible, or inconsistent a reasonable jury would find it unworthy of credence.  Plotke, 405

F.3d at 1102; Adler v. Wal-mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998). While an employee is not forced to pursue any particular means of demonstrating pretext, Kendrick, 220 F.3d at 1230, she can typically make the showing with evidence that: (1) the employer's proffered reason for discharge was false; (2) the employer acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) the employer acted contrary to an unwritten policy or practice when it took the adverse action. English, 248 F.3d at 1009.

In this case, Plaintiff must proceed under the McDonnell-Douglas framework because she has not presented any direct evidence that BHP terminated her on the basis of race or gender. Plaintiff carried her burden of establishing a prima facie case of race and gender discrimination: Plaintiff belongs to a protected class; Plaintiff's thirteen-year period of employment with BHP raises an inference she was qualified for her positions with BHP; and, despite these qualifications, BHP terminated Plaintiff.[4] BHP's decision not to replace Plaintiff

---

[4] In Aramburu, 112 F.3d at 1403, the Tenth Circuit stated a Title VII plaintiff must demonstrate, as part of the prima facie case, that the employer treated similarly situated non-minority employees differently. The parties' memoranda of law in this case dispute whether Plaintiff satisfied this requirement as part of her prima facie case. The Tenth Circuit, however, subsequently "clarified the elements required to establish a prima facie case[,]" Amro, 232 F.3d at 796, and "held that a plaintiff does not have to show differential treatment of persons outside the protected class to meet the initial prima facie burden under
(continued...)

is irrelevant. Plotke, 405 F.3d at 1100. In turn, BHP proffered a legitimate, non-discriminatory reason for Plaintiff's discharge; namely, Smith terminated Plaintiff because she had three unexcused absences within a six-month period in violation of BHP's Attendance Policy. The dispositive inquiry, then, is whether Plaintiff carried her ultimate burden of proving BHP's reason for discharging her was a pretext for unlawful race and/or gender discrimination. Plaintiff falls woefully short of carrying her burden.

Plaintiff failed to present any admissible direct or circumstantial evidence that BHP's proffered reason for terminating her was a pretext for unlawful race or gender discrimination. The undisputed evidence demonstrates BHP discharged Plaintiff in accordance with its Attendance Policy after she failed to report to work on September 21, 28, and 30, 2003. Plaintiff's supervisor properly considered the absences unexcused. Therefore, under BHP's Attendance Policy, Plaintiff was presumed to have terminated her employment with the company.

Plaintiff nevertheless argues her absences on September 21 and 30 should have been excused. Plaintiff claims her September 21 absence should have been

---

[4](...continued)
McDonnell-Douglas." English, 248 F.3d at 1008. Evidence concerning the differential treatment of employees outside the protected class is nevertheless relevant to the pretext inquiry. Kendrick, 220 F.3d at 1229 n.8. This court, therefore, will consider the parties' differential treatment arguments under the third step – and not the first – of the McDonnell-Douglas framework.

excused because BHP has an unwritten policy or practice of allowing employees to "refuse" overtime. Plaintiff's argument is untenable. Even *assuming* such an unwritten policy existed at BHP (which it does not), Plaintiff's own testimony demonstrates she *accepted* – not refused – the September 21 overtime shift and then failed to report to work. BHP, therefore, appropriately treated Plaintiff's absence on September 21 as unexcused.

Plaintiff also argues her September 30 absence should have been excused because she presented a medicine woman's note that indicated she was sick. This argument fails because Plaintiff never "reported off" for the September 30 shift in contravention of the Attendance Policy. Under the Attendance Policy, Plaintiff was required to report her illness in advance of the shift or as soon as practicable thereafter. Plaintiff did not present her doctor's note until she returned to work. Plaintiff's supervisor, as a result, properly considered her absence unexcused under the Attendance Policy. See Kendrick, 220 F.3d at 1231 (explaining the court must look at the facts as they appear to the person making the decision to terminate plaintiff). Thus, the undisputed evidence demonstrates BHP discharged Plaintiff in accordance with its written Attendance Policy and not contrary to any unwritten policy or practice.

Furthermore, Plaintiff has not presented any evidence showing a nexus between her discharge and race or gender discrimination. See English, 248 F.3d

at 1010 (explaining that an employee must show some nexus between her termination and the employer's discriminatory animus). Indeed, Plaintiff has not presented any admissible circumstantial evidence showing the supervisor responsible for her discharge (Smith) harbored discriminatory animus.[5] The evidence also demonstrated BHP applied its Attendance Policy in a facially neutral manner. Between 2002 and 2003, BHP terminated a white male, Navajo female, and Navajo male for violation of its Attendance Policy. Plaintiff, as a result, failed to carry her burden of demonstrating that BHP's reason for terminating her was so weak, implausible, or inconsistent that a reasonable jury would find it unworthy of credence. The Tenth Circuit's decisions in <u>Kendrick</u> and <u>English</u> dictate, if not compel, the conclusion that BHP is entitled to summary judgment on Plaintiff's discriminatory discharge claims.

B.

Plaintiff also alleges a sexually hostile work environment existed at BHP. "Title VII's prohibition of employment discrimination based on sex encompasses

---

[5] Plaintiff testified that she "believed" Smith was "a bit racist." (Pl.'s Resp., Exh. A, at 112-13). Plaintiff's belief, however, was based upon workplace rumors, <u>id.</u>, and thus inadmissible. <u>See</u> Fed. R. Evid. 602 (providing "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). The evidence relating to Shondee, <u>see</u> <u>supra</u> n.3, is irrelevant to Plaintiff's discriminatory discharge claims because no evidence indicates that Shondee had anything to do with, or even knew about, Plaintiff's termination.

hostile work environment sexual harassment." Adler, 144 F.3d at 672.  The Tenth Circuit has explained:

> To establish a sexually hostile work environment existed, a plaintiff must prove the following elements:  (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment.

Dick v. Phone Directories Co., Inc., 397 F.3d 1256, 1262-63 (10th Cir. 2005) (internal quotations and brackets omitted).  Therefore, "[b]ased on the totality of the circumstances, the environment must be perceived both subjectively and objectively as abusive." Adler, 144 F.3d at 672.  "To determine whether an environment is hostile, courts must look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Chavez v. Thomas & Betts Corp., 396 F.3d 1088, 1096 (10th Cir. 2005) (internal quotations and citation omitted).  In Penry v. Federal Home Loan Bank of Topeka, 155 F.3d 1257, 1263 (10th Cir. 1998), for example, the Tenth Circuit held a supervisor's three gender-based comments and four acts of unwanted physical touching over a three-year period were too few and far between to create an objectively abusive working environment.

13

In this case, Plaintiff argues a sexually hostile work environment existed at the Navajo Mine because: Shondee reprimanded her for using a computer; Shondee singled her out when she complained about inaccurate overtime reporting; Shondee made a derogatory comment about her work ethic; Shondee conducted a surprise drug test on her; and BHP denied her overtime as an electrician after she requested to be transferred off the electrical crew. No evidence exists, however, showing these five incidents of harassment were gender-based. See Dick, 397 F.3d at 1263 (requiring harassment to be based on sex). The incidents, as a result, do not support Plaintiff's hostile work environment claim. See Stahl v. Sun Microsystems, Inc., 19 F.3d 533, 538 (10th Cir. 1994) (explaining that "[i]f the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment.").

Plaintiff also complains that Shondee permitted "Ms. Aspaas free reign to neglect her work duties and spend time in his office behind locked doors." This fact does not advance Plaintiff's hostile work environment claim. "Title VII does not prohibit favoritism shown to a supervisor's paramour because such preferential treatment is based on voluntary romantic affiliation and not gender differences." Miller v. Regents of Univ. of Colo., 188 F.3d 518, 1999 WL 506520, *8 (10th Cir. 1999) (unpublished) (citing Taken v. Oklahoma Corp.

14

Comm'n, 125 F.3d 1366, 1370 (10th Cir. 1997)).  Plaintiff is thus left with the inappropriate sexual comment Shondee made to Dalapaz, but that statement is inadmissible hearsay.  See supra n.3.  Consequently, Plaintiff did not produce any admissible evidence demonstrating she endured gender-based harassment at BHP.  No rational jury could find Plaintiff's workplace was permeated with severe and pervasive *sexual* harassment.[6]  See Penry, 155 F.3d at 1263; Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1366 (10th Cir. 1997).

### III.

Count III of Plaintiff's complaint alleges BHP unlawfully retaliated against her for engaging in protected Title VII activity.  Section 704(a) of Title VII prohibits retaliation against any employee because she opposed any practice made unlawful under Title VII.  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation, the employee must show:  (1) she engaged in opposition to Title VII discrimination; (2) she was subjected to an adverse employment action; and (3) a causal connection exists between her protected activity and the adverse action.  Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 857 (10th Cir. 2000).

---

[6] This court summarily rejects Plaintiff's argument that the alleged incidents of harassment constitute discrete discriminatory acts of sexual harassment.  Plaintiff's claim is meritless because the incidents were not gender-based or inadmissible.  Furthermore, Plaintiff's claim of sexual harassment fails because none of the incidents amounted to an adverse employment action.  See Sanchez v. Denver Pub. Schs., 164 F.3d 527, 532 (10th Cir. 1998); Wells v. Colo. Dep't of Transp., 325 F.3d 1205, 1213 (10th Cir. 2003).

In this case, Plaintiff engaged in protected opposition to discrimination when she complained to BHP management about the treatment of women in the fall of 2000. See Jeffries v. Kansas, 147 F.3d 1220, 1231 & n.9 (10th Cir. 1998). Plaintiff's termination in the fall of 2003 was an adverse employment action. Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999). Plaintiff, however, cannot establish a causal connection between her opposition to discrimination and termination for two reasons. First, the Tenth Circuit has consistently held an employer cannot engage in unlawful retaliation if it does not *know* that the employee has opposed discrimination. Jones v. Barnhart, 349 F.3d 1260, 1269 (10th Cir. 2003); Peterson v. Utah Dep't of Corrections, 301 F.3d 1182, 1188 (10th Cir. 2002); Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993). Smith, the BHP supervisor who terminated Plaintiff, testified he was not aware that Plaintiff represented any other employee with respect to any previous discrimination or harassment claims. Second, the three-year period between Plaintiff's protected activity and termination is insufficient as a matter of law to raise an inference of retaliatory motive. See Kendrick, 220 F.3d at 1234. Accordingly, Plaintiff failed to establish a prima facie case of retaliation.

IV.

Plaintiff's evidence of isolated incidents of discordance between herself and BHP supervisors fails to demonstrate BHP discriminated against her *because*

16

*of* race or gender.  Title VII is not a general civility code nor does it make actionable the ordinary tribulations of the workplace.  <u>Gunnell v. Utah Valley State College</u>, 152 F.3d 1253, 1265 (10th Cir. 1998).  Defendant's summary judgment motion (Docket No. 23) is therefore **GRANTED**.[7]

                                    Entered for the Court
                                    this 19th day of July 2005


                                    Bobby R. Baldock
                                    United States Circuit Judge
                                    Sitting by Designation

---

[7] This court considered all of Plaintiff's evidence and arguments notwithstanding her violation of D.N.M. Local R. 7.1(b).  <u>See</u> <u>Reed v. Bennett</u>, 312 F.3d 1190, 1195 (10th Cir. 2002).